**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| VICOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MONOLITHIC POWER SYSTEMS, INC., CHENGDU MONOLITHIC POWER SYSTEMS CO. LTD., MPS INTERNATIONAL (SHANGHAI) LTD.,<br><br>Defendants. | Civil Action No. 7:26-cv-00364<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Vicor Corporation makes the following allegations against Defendants Monolithic Power Systems, Inc., Chengdu Monolithic Power Systems Co., Ltd., MPS International (Shanghai) Ltd. (together, "MPS"), each of whom is a manufacturer and/or distributor who, without authority, makes, imports, uses, offers for sale, and/or sells in the United States certain vertical power delivery systems, components thereof, and/or computing systems containing the same that infringe U.S. Patent No. 10,903,734.

## PARTIES

### Vicor

1. Plaintiff Vicor Corporation ("Plaintiff" or "Vicor") is a Delaware corporation with its principal place of business at 25 Frontage Road, Andover, MA 01810. Vicor is a NASDAQ-listed public company that was founded in 1981 by Dr. Patrizio Vinciarelli in Massachusetts. Dr. Vinciarelli, the lead inventor of the patent asserted in this Complaint, remains Vicor's CEO to this day. Headquartered in the United States, Vicor is a leading provider of high-performance power

modules and systems for use in advanced computing applications—like powering advanced processors in server motherboards, artificial intelligence accelerator cards and systems, and server rack power conversion for use in datacenters. Vicor is the owner of all rights, title, and interest in and to the Asserted Patent, U.S. Patent No. 10,903,734 ("the '734 Patent").

**MPS Defendants**

2. Monolithic Power Systems, Inc. is organized under the laws of the State of Delaware with its principal place of business at 5808 Lake Washington Blvd. NE, Kirkland, Washington 98033. Monolithic Power Systems describes itself as "re-imagining and re-defining the possibilities of high-performance power solutions in industrial applications, telecom infrastructures, cloud computing, automotive, and consumer applications." *About MPS*, Monolithic Power Systems, https://www.monolithicpower.com/en/about-mps.html [https://perma.cc/W8L3-J3LQ] (last visited Sept. 3, 2026). It "provides small, ultra-efficient, easy-to-use power management solutions including Power Modules [and] Power Converters." *Products*, Monolithic Power Systems, https://www.monolithicpower.com/en/products.html [https://perma.cc/C5AR-TEWJ] (last visited Sept. 3, 2026).

3. Monolithic Power Systems is a parent of multiple subsidiaries, including Defendants Chengdu Monolithic Power Systems Co., Ltd. and MPS International (Shanghai) Ltd. *See* Monolithic Power Systems, *Subsidiaries of Monolithic Power Systems, Inc.*, SEC, https://www.sec.gov/Archives/edgar/data/1280452/000143774925005903/ex_728187.htm [https://perma.cc/54RD-B5U6] (last visited Sept. 3, 2026).

4. Defendant Chengdu Monolithic Power Systems Co., Ltd. is a Chinese company with the business address #8 Kexin Road, Hi-Tech Comprehensive Bonded Zone, Chengdu, Sichuan, 611731, China.

5. Defendant MPS International (Shanghai) Ltd. is a Chinese company with the business address Suite 704-705, Tian An Centre, No. 338 Nanjing Road (West), Shanghai, 200003, China.

6. The Complaint refers to Monolithic Power Systems Inc., Chengdu Monolithic Power Systems Co., Ltd., and MPS International (Shanghai) Ltd. collectively as the "MPS Defendants" or "MPS."

7. On information and belief, each of the MPS Defendants, either directly or through Monolithic Power Systems' subsidiaries and affiliates, makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States certain vertical power delivery systems, components thereof, and computing systems containing the same that infringe the '734 Patent ("Accused Products").

8. On information and belief, MPS makes, uses, offers to sell, sells, and/or imports within the State of Texas and the Western District of Texas the Accused Products, contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Western District of Texas, as described further herein.

9. On information and belief, MPS does business itself, and/or through its subsidiaries, affiliates, and agents, in the State of Texas and the Western District of Texas and has placed the Accused Products into the stream of commerce throughout the State of Texas and/or in the Western District of Texas.

10. Through offers to sell, sales, importations, and/or related agreements with affiliates,

distributors, and customers operating in and maintaining a significant business presence in the U.S. and/or via subsidiaries maintaining such a presence, including via wholly owned (directly or indirectly), consolidated, and controlled subsidiaries, MPS does business in the United States, the state of Texas, and in this District.

## JURISDICTION AND VENUE

11. This is an action for patent infringement arising under the patent laws of the United States. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over each MPS Defendant because (A) the Defendant conducts business in and has committed acts of patent infringement in this District, contributed to acts of patent infringement in this District, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice; or, in the alternative, (B) the Defendant has established minimum contacts with the United States as a whole, but not a single state, such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice pursuant to Fed. R. Civ. P. 4(k)(2).

13. Monolithic Power Systems, Inc. conducts substantial business with entities and individuals in the State of Texas and the Western District of Texas by, among other things: (A) making, using, selling, offering to sell, and/or importing products that infringe the ’734 Patent, both through its own infringing activities and those committed vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail Monolithic Power Systems, Inc. of the privilege of conducting those activities in this state and this District; and (B) regularly doing or soliciting

business in this District, providing service and support to its customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through its own conduct and/or in concert with or through its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

14. For example, Monolithic Power Systems, Inc. works with Texas-based distributors to sell its products, including Mouser Electronics, Avnet, WPG Americas, and Future. *See* Monolithic Power Systems, *Sales Distributors*, https://www.monolithicpower.com/en/sales-distributors?srsltid=AfmBOoqLmqq4BQoJ7NCehlS0GPJfRmOPfERx5VpiFzcwfkkNTco2mAO2 [https://perma.cc/86FG-KDDB] (last visited Sept. 3, 2026).

15. Accordingly, Monolithic Power Systems, Inc. places the accused vertical power delivery systems, components thereof, and/or computing systems containing the same into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be sold in the State of Texas, including in this District, and does not otherwise permit the sale of the Accused Products in the State of Texas, or in this District, outside of these established, authorized, and ratified distribution channels and networks.

16. On information and belief, Chengdu Monolithic Power Systems Co., Ltd., and MPS International (Shanghai) Ltd. participate sufficiently in the Monolithic Power Systems, Inc. power converter supply chain to establish minimum contacts with the United States as a whole.

17. Venue is proper in this District as to each Defendant pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b), either because (A) the Defendant is a foreign corporation who is not a resident of the United States and thus is subject to venue in any judicial district, including this District; or (B) the Defendant resides in this District and/or has committed acts of infringement in

this District and has a regular and established place of business in this District.

18. Venue is proper in this District as to Chengdu Monolithic Power Systems Co., Ltd., and MPS International (Shanghai) Ltd. because they are foreign entities and venue is proper in any judicial district.

19. Venue is proper in this District as to Monolithic Power Systems, Inc., because Monolithic Power Systems, Inc. has committed acts of infringement in the District as discussed above and has at least one regular and established place of business in the District. Monolithic Power Systems, Inc. establishes a place of business by soliciting and/or supporting the physical presence of multiple current employees in the District, such as a Technical Sales Engineer (Server/AI), a Technical Sales Manager and Account Manager, a Sr. Manager of Sales (specifically including AI sales), a Strategic Account Manager, an FAE Manager, and a Sr. Staff Technical Marketing & Applications Engineer. *See Akshat Murali*, LinkedIn, https://www.linkedin.com/in/akshat-murali/ (last visited Sept. 3, 2026); *Whitney Boatright*, LinkedIn, https://www.linkedin.com/in/whitney-boatright-612b9528/ (last visited Sept. 3, 2026); *Victor Gallagher*, LinkedIn, https://www.linkedin.com/in/vgallagher/ (last visited Sept. 3, 2026); *Dylan Wilson*, LinkedIn, https://www.linkedin.com/in/dylan-wilson1/ (last visited Sept. 3, 2026); *Sam Robinson*, LinkedIn, https://www.linkedin.com/in/sam-robinson-695bba7/ (last visited Sept. 3, 2026); *David Fratzke*, LinkedIn, https://www.linkedin.com/in/david-fratzke-4a27353b/?locale=en_US (last visited Sept. 3, 2026).

20. On information and belief, the physical presence of these employees in the District benefits Monolithic Power Systems, Inc.'s business. For example, the Technical Sales Engineer (Server/AI)'s LinkedIn page emphasizes he is managing "AI/Server customer accounts within Texas." *Akshat Murali*, LinkedIn, https://www.linkedin.com/in/akshat-murali/ (last visited Sept.

3, 2026). His job and contribution to the company would not be equivalent if he worked remotely from somewhere else. On information and belief, all these employees store and retain some amount of Monolithic Power Systems, Inc. materials in their homes including, at a minimum, a Monolithic Power Systems, Inc. computer with company documents. The solicitation and retention of such employees in this District establishes a physical, regular place of business for Monolithic Power Systems, Inc. in this District.

## SINGLE ACTION

21. This suit is commenced against Defendants pursuant to 35 U.S.C. § 299 in a single action because (A) a right to relief is asserted against Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and/or selling of the same accused products or processes, and (B) questions of fact common to all Defendants will arise in the action.

22. Plaintiff is informed and believes, and on that basis alleges, that each named Defendant manufactures, imports, uses, offers for sale, and/or sells the same products and processes accused in this action.

## THE ASSERTED PATENT

23. This action asserts causes of action for infringement of one or more claims of U.S. Patent No. 10,903,734 ("the '734 Patent" or "the Asserted Patent"). U.S. Patent No. 10,903,734 is a valid and enforceable United States Patent. A true and correct copy of the Patent is attached as **Exhibit 1**.

24. The '734 Patent, titled "Delivering Power to Semiconductor Loads," issued on January 26, 2021, from U.S. Patent Application No. 16/218,418, filed on Dec. 12, 2018, which is

a Continuation - in - part of application No. 15 / 616,288, filed on June 7, 2017, now Pat. No. 10,277,105, which is a continuation - in - part of application No. 15/091,346, filed on Apr. 5, 2016, now Pat. No. 10,158,357.

25. Patrizio Vinciarelli is the named inventor of the '734 Patent. The patent assignment record showing transfer of title of the '734 Patent from Dr. Vinciarelli to Vicor Corporation is attached as **Exhibit 2**. Vicor owns by assignment the entire right, title, and interest in the '734 Patent, including the sole and exclusive right to bring a claim for its infringement.

26. The '734 Patent[1] relates to what is now known as Vertical Power Delivery or "VPD". By stacking a "multi-cell converter" with a "Gearbox" including a capacitive layer, lateral translations, and inter-digitation, VPD reduces power distribution losses and enables superior current density, power density and efficiency. VPD overcomes the "last inch problem" of Lateral Power Delivery.

27. The below figure from the patent shows an exemplary 2x2 array of VPD modules as components of a VPD system for a Cerebras Wafer Scale Engine ("WSE"). The WSE is powered by an array of 84 modules, one for each of 84 reticles within the wafer. The WSE is fueled at up to 30,000A at 0.7V. Each VPD module resides above a WSE reticle. Power to each WSE reticle flows vertically from a 54V source at the top of the VPD module to the wafer reticle at its bottom. As shown in the figure, and disclosed in the '734 Patent, the exemplary VPD modules comprise a multiplicity of layers, including a multi-cell converter and a Gearbox providing a capacitive layer, lateral connections, and inter-digitation.

[1] The Non-Technical Descriptions throughout the Complaint do not, and are not intended to, construe or limit the '734 Patent's scope or meaning.




FIG. 11

28. The patented technology has applications in high-performance computing, as well as in communications and network infrastructure that have extreme current density requirements, greater than 1A/mm2, provided by VPD. VPD enables AI and its growth trajectory because of the extreme current density demands of AI processing.

## FACTUAL ALLEGATIONS

29. No Defendant has any right to practice the intellectual property protected by the Asserted Patent.

30. On information and belief, each of the MPS Defendants, either directly or through Monolithic Power Systems' subsidiaries and affiliates, makes, uses, offers to sell, and/or sells within the United States[2], and/or imports into the United States certain vertical power delivery

[2] As referred to in this Complaint, and consistent with 35 U.S.C. § 100(c), the "United States" means "the United

systems, components thereof, and computing systems containing the same that infringe the '734 Patent ("Accused Products").

31. For example, on information and belief, each of the MPS Defendants either directly or through a subsidiary or affiliate, makes, uses, offers to sell, and/or sells within the United States, and/or imports within the United States the MPC2M110-L and/or vertical power delivery systems, components thereof, and/or computing systems containing the same.

32. The MPC2M110-L is a ZPD inter-connection module that uses vertical power delivery, a printed circuit board to which the MPC22166 module and/or other compatible modules may be attached. This board, on information and belief, provides interconnects between the MPC22166 and/or other compatible modules and the die or other device requiring power delivery.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 10,903,734**

33. Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

34. On information and belief, MPS makes, uses, offers to sell, or sells within the United States certain Accused Products, such as the MPC2M110-L and/or MPC22166, which directly infringe, literally and/or through the doctrine of equivalents, at least claims 1, 2, 8, 40, 67, 68, 81, 83, 84, and 90 of the '734 Patent in violation of 35 U.S.C. § 271(a). A non-limiting and exemplary claim chart of MPS's infringement of independent claims 1, 20, 40, 45, 53, 67 and 68 of the '734 Patent, including photographs and drawings where applicable, is attached as **Exhibit**

---

States of America, its territories and possessions."

**3**, with supporting materials at **Exhibit 4**.

35. On information and belief, MPS also knowingly and intentionally induces infringement of at least claims 1, 2, 8, 40, 67, 68, 81, 83, 84, and 90 of the ’734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, MPS has had knowledge of the ’734 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’734 Patent, MPS continues to actively encourage and instruct its customers and end users (for example, through its marketing, distribution of datasheets and technical product manuals to its customers, and technical support) to use the Accused Products in ways that directly infringe the ’734 Patent literally and/or under the doctrine of equivalents. MPS does so knowing and intending that its customers and end users will commit these infringing acts. MPS also continues to make, use, import, offer for sale, and/or sell the Accused Products, despite its knowledge of the ’734 Patent, thereby specifically intending for and inducing its customers to infringe the ’734 Patent through the customers’ normal and customary use of the Accused Products.

36. On information and belief, MPS also contributorily infringes at least claims 1, 2, 8, 40, 67, 68, 81, 83, 84, and 90 of the ’734 Patent in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the ’734 Patent. MPS does so knowing that these components are especially made or especially adapted for uses that infringe the ’734 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

37. MPS committed the foregoing infringing activities without license from Vicor.

MPS's acts of infringement have damaged Vicor, as owner of the '734 Patent. Vicor is entitled to recover from MPS the damages it has sustained as a result of MPS's wrongful acts in an amount subject to proof at trial. MPS's infringement of Vicor's rights under the '734 Patent will continue to damage Vicor.

## DEMAND FOR JURY TRIAL

38. Plaintiff Vicor hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vicor requests entry of judgment in its favor and against Defendants as follows:

A. Declaring that Defendants have each infringed United States Patent No. 10,903,734;

B. Awarding damages to Plaintiff in an amount no less than a reasonable royalty for each Defendant's infringement of United States Patent No. 10,903,734, together with prejudgment and post-judgment interest and without limitation under 35 U.S.C. § 287;

C. Declaring that Defendants' infringement of United States Patent No. 10,903,734 has been willful and deliberate, at least from the filing of this Complaint, such that Vicor is entitled to treble damages;

D. Awarding injunctive relief precluding the Defendants from ongoing infringement of United States Patents No. 10,903,734, or, in the alternative, an ongoing royalty for each Defendant's continued infringement of United States Patent No. 10,903,734;

E. Awarding attorney's fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

F. Awarding such other costs and further relief as the Court may deem just and proper.

Dated: September 8, 2026

Respectfully submitted,

*/s/ Mark D. Siegmund*
Mark D. Siegmund
Texas Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES PC
7901 Fish Pond Rd, Suite 200
Waco, TX 76710-1013
Telephone: (254) 732-2242
Facsimile: 866-627-3509
Email: msiegmund@cjsjlaw.com

Oleg Elkhunovich*
California Bar No. 269238
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: vicorvpd-itc@susmangodfrey.com

Steven Seigel
Washington Bar No. 53960
Jenna Farleigh
Washington Bar No. 47392
Andres Healy
Washington Bar No. 45578
Danielle Nicholson*
Washington Bar No. 57873
Dinis Cheian*
New York Bar Registration No. 5958152
SUSMAN GODFREY LLP
401 Union Street, Suite 3000
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: vicorvpd-itc@susmangodfrey.com

Isabella Soparkar*
Texas Bar No. 24150831
Jeff David*
Texas Bar No. 24053171
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: vicorvpd-itc@susmangodfrey.com

Louis S. Mastriani*
DC Bar No. 386820
Lloyd Smith*
DC Bar No. 454606
Buchanan Ingersoll & Rooney PC
1700 K Street N.W., Suite 300
Washington, D.C. 20006-3807
Telephone: (202) 407-7900
Facsimile: (202) 452-7989
VICORII-ITC@bipc.com

*Counsel for Vicor Corporation*

**pro hac vice forthcoming*